IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 6 2000

MICHAEL N. MILBY, CLERK

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | § § § § |
| Plaintiff, | § |
| v. | § NO. C -00- 64 |
| VERONICA CLARK, | § § |
| Defendant. | § § |

## COMPLAINT

Plaintiff, Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure against Defendant Veronica Clark ("Defendant") for: (i) breach of contract; (ii) conversion of trade secrets, customer lists and confidential business information; (iii) breach of duty of loyalty; and (iv) unfair competition, and in support thereof avers as follows:

### I. PARTIES

1.  Merrill Lynch is a Delaware corporation maintaining its principal place of business at World Financial Center, North Tower, New York, New York and transacting business in this judicial district through an office located at 800 North Shoreline Blvd., North Tower, Suite 1800, Corpus Christi, Texas 78401. Merrill Lynch is a citizen and resident of the states of Delaware and New York.

2.  Defendant is a former sales associate and employee of Merrill Lynch's Corpus Christi, Texas office, and resides at 522 Hiawatha Street, Corpus Christi, Texas 78405.

1

## II. JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65. Venue is proper in this Court under 28 U.S.C. § 1391 as the complained of conduct arose in this judicial district.

## III. THE FACTS

4. Merrill Lynch is engaged in the business of, inter alia, providing financial services.

5. Defendant commenced employment with Merrill Lynch in October 1994.

6. As a condition of her employment with Merrill Lynch, Defendant executed three non-disclosure and confidentiality agreements which, inter alia, prohibit the removal or copying of information regarding Merrill Lynch customers, prohibit the use of such information for purposes other than conducting the business of Merrill Lynch, and prohibit the disclosure of such information to any third parties, such as a Merrill Lynch competitor (collectively the "Agreements").

7. Specifically, as a condition of her employment with Merrill Lynch, Defendant agreed on an annual basis to comply with the terms of Merrill Lynch's Compliance

<u>Outline for Private Client Financial Consultants</u>, which provides in relevant part as follows:

### CONFIDENTIALITY OF CLIENT INFORMATION

**You may not discuss the business affairs of any client with anyone**, including other employees except on a need-to-know basis. **Information or records concerning the business of the Firm and/or its clients may not be released** except to persons legally entitled to receive them.

A copy of the pertinent portion of the <u>Compliance Outline for Private Client Financial Consultants</u>, is attached hereto as Exhibit "A" (emphasis added). Each year Defendant certified that she had received and re-read Merrill Lynch's <u>Compliance Outline</u>.

       8.    Defendant also agreed to abide by Merrill Lynch's <u>Guidelines for Business Conduct</u>, which provide, in relevant part, as follows:

> Merrill Lynch's assets include more than its capital - there are its premises, equipment, **information**, business plans, ideas for new products and services, **client lists**, and, most important, in a very real sense, its people. **It is expected that employees will use these assets only for the purposes intended and not for their personal benefit** unless they have been approved for general employee or public use. This even extends to business opportunities that come to employees as a result of their employment - they are the proprietary opportunities of Merrill Lynch.

See Exhibit "B" attached hereto (emphasis added).

       9.    As a further condition of her employment with Merrill Lynch, Defendant agreed in writing to abide by Merrill Lynch's <u>Conflict of Interest</u> agreement, which provides in relevant part as follows:

> I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

(Exhibit "C").

3

10. In exchange for these promises Defendant made to Merrill Lynch as a condition of her employment, Merrill Lynch provided the following:

    (a) employment as a sales associate and client associate;

    (b) salary and other compensation while employing Defendant in a sales position; and

    (c) facilities, sales support, benefits, and other good and valuable consideration.

11. Merrill Lynch provided the above consideration to Defendant and has satisfied all conditions precedent.

12. More specifically, Merrill Lynch compensated Defendant at all times during her period of employment with Merrill Lynch, and provided Defendant with all Merrill Lynch resources, benefits and support at all times.

13. By virtue of Defendant's employment at Merrill Lynch, she gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially, the identity of Merrill Lynch customers, including the names and addresses, financial statements, investment objectives and the securities held by these customers in her Merrill Lynch accounts.

14. As a result of the foregoing, Defendant specifically acquired information and records that revealed the names and addresses and confidential information of hundreds of Merrill Lynch accounts, representing over $200 million in assets under Merrill Lynch management, and which generated more than $2 million in annual revenues for Merrill Lynch in 1999 alone.

4

15. After Defendant's employment with Merrill Lynch ended in 1999, she joined a competitor securities firm, First Union Securities, Inc. ("First Union").

16. While still employed by Merrill Lynch, and continuing thereafter, Merrill Lynch believes and therefore avers that Defendant prepared to engage in and engaged in, inter alia, the removal of Merrill Lynch records and/or the information contained therein, and conversion for personal use of confidential Merrill Lynch business information; and other such acts contrary to the terms, conditions, and provisions of the Agreements signed by Defendant, Merrill Lynch's property rights, and Defendant's common law and fiduciary obligations.

17. Defendant's conduct was and is in furtherance of a scheme to obtain and convert to her personal use and gain and that of her current employer the information contained in the records of Merrill Lynch, including the names, addresses and other customer information used to conduct business at Merrill Lynch, the confidential and trade secret information of Merrill Lynch, and the goodwill generated, directly and indirectly, by her association with Merrill Lynch, and to do so by means of, inter alia, solicitation of Merrill Lynch clients serviced by Defendant and whose names became known to her while employed by Merrill Lynch.

18. Upon information and belief, Merrill Lynch avers:

(1) That Defendant has possession of the confidential customer information contained in Merrill Lynch records, Merrill Lynch proprietary information, Merrill Lynch trade secrets, and lists of Merrill Lynch customer accounts and/or copies or reproductions thereof, and leads, including names and addresses and special investment information of Merrill Lynch customers;

(2) That Defendant has used and will continue to use this information to solicit Merrill Lynch accounts and to divert the business of Merrill Lynch customers from Merrill Lynch to her current employer; and

5

(3)     That Defendant will otherwise continue to engage in acts constituting a breach of the terms of her Merrill Lynch Agreements and Merrill Lynch policies and guidelines; a breach of her duty of loyalty; and other tortious conduct, including conversion of trade secrets and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

19.     The averments of Paragraphs 1 through 18 are incorporated by reference herein with the same force and effect as if set forth in full below.

20.     By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant.

21.     Unless Defendant is preliminarily and permanently enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, and other confidential information which are solely the property of Merrill Lynch and its clients;

(b)     Loss of confidentiality of the information contained in clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c)     Loss of personnel and threat to office stability; and

(d)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

22.     Merrill Lynch has no adequate remedy at law.

6

WHEREFORE, Merrill Lynch respectfully requests that:

1. A Temporary Restraining Order and/or a Preliminary Injunction Order issue immediately, enjoining Defendant, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendant's new employer, First Union, from soliciting, re-soliciting or accepting business or account transfers from:

(a) Any client of Merrill Lynch whose name first became known to Defendant while employed by Merrill Lynch; and

(b) Any client of Merrill Lynch whom Defendant already has solicited through the use of any records or information, in original, copied, computerized, handwritten or any other form, that Defendant obtained while employed by Merrill Lynch including, without limitation, any customer names, addresses or phone numbers contained on any computer database.

## COUNT II

## BREACH OF CONTRACT

23. The allegations of Paragraphs 1 through 22 are incorporated herein by reference with the same force and effect as if set forth in full below.

24. Defendant has violated, inter alia, the terms and conditions of her Agreements with Merrill Lynch, Exhibits "A" - "C" hereto, which Defendant agreed to abide by in writing.

25. Defendant has violated and is continuing to violate the contractual obligations under her Agreements.

26. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

27. The allegations of Paragraphs 1 through 26 are incorporated herein by reference with the same force and effect as if set forth in full below.

28. The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in her Merrill Lynch accounts and other financial information, are trade secrets subject to protection under Texas law.

29. This information derives independent economic value by not being accessible, through proper means, to competitors who can profit from its use or disclosure.

30. Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information.

31. The foregoing conduct of Defendant constitutes a misappropriation of Merrill Lynch's confidential, trade secret information.

32. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

## TORT-CONVERSION

33. The allegations of Paragraphs 1 through 32 are incorporated herein by reference with the same force and effect as if set forth in full below.

34. The foregoing conduct of Defendant constitutes a conversion of Merrill Lynch's proprietary and confidential business information.

8

35. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

### BREACH OF DUTY OF LOYALTY

36. The allegations of Paragraphs 1 through 35 are incorporated herein by reference with the same force and effect as if set forth in full below.

37. Defendant has violated the common law duty of loyalty arising under her Agreements and relationship with Merrill Lynch in that, while employed by Merrill Lynch, Defendant took Merrill Lynch's records, clients, and trade secrets.

38. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI

### UNFAIR COMPETITION

39. The allegations of Paragraphs 1 through 38 are incorporated herein by reference with the same force and effect as if set forth in full below.

40. The foregoing conduct of Defendant constitutes an unfair method of competition.

41. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V and VI, Merrill Lynch demands judgment in its favor and against Defendant for temporary and preliminary injunctive relief pending an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators pursuant to Rule 10335(g) of the National Association of Securities

Dealers Code of Arbitration Procedure.

Respectfully submitted,

*[signature]*

David W. Green
Texas Bar No. 08347475
Federal Bar No. 11258
BARGER, HERMANSEN,
　McKIBBEN & VILLAREAL, LLP
One Shoreline Plaza
800 North Shoreline Boulevard
Suite 2000, North Tower
Corpus Christi, Texas 78401
361/882-6611; FAX 361/866-8039

Attorneys for Plaintiff Merrill Lynch,
Pierce, Fenner & Smith Inc.

Of Counsel:

Daniel P. O'Meara
RUBIN & ASSOCIATES, P.C.
MCS Building
10 South Leopard Road
Suite 202
Paoli, PA  19301
(610) 408-2005
(610) 408-9050 (telecopy)

10


**Merrill Lynch**

# Compliance Outline

## For Private Client Financial Consultants

August 1997

Merrill Lynch & Co., Inc.

# MERRILL LYNCH, PIERCE, FENNER & SMITH INC.

# COMPLIANCE OUTLINE
# FOR
# PRIVATE CLIENT FINANCIAL CONSULTANTS

## AUGUST 1997

This outline is a reminder and quick reference source. It does not replace the *Merrill Lynch & Co. Policy Manual*, the *Branch Office Policy Manual*, the *Procedures Manual for Branch Offices* or other more detailed sources. It is intended to help Financial Consultants avoid situations that can lead to complaints, regulatory problems or adverse publicity.

You are required to review the outline and acknowledge your understanding of its contents annually.

**IF YOU HAVE QUESTIONS ABOUT THIS MATERIAL OR OTHER COMPLIANCE-RELATED ISSUES, PLEASE CONSULT WITH YOUR MANAGER OR COMPLIANCE OFFICER.**

## CONFIDENTIALITY OF CLIENT INFORMATION

You may not discuss the business affairs of any client with anyone, including other employees except on a need-to-know basis. Information or records concerning the business of the Firm and/or its clients may not be released except to persons legally entitled to receive them.

## 1999

## COMPLIANCE OUTLINE CERTIFICATION

I have read and understand the latest Compliance Outline for Private Client Financial Consultants dated August 1997.

*Veronica S. Clark*  
**FC Signature**

2-10-99  
**Date**

# Merrill Lynch

# Guidelines for Business Conduct



Merrill Lynch

### Regard for Merrill Lynch Assets

Merrill Lynch is committed to the use of a strong, effective system of internal controls designed to safeguard and preserve the Firm's assets. Each company in the Merrill Lynch organization is responsible for maintaining and enforcing a system of internal administrative and accounting controls. These systems of control, which are mandated by law, are designed to ensure that all business transactions are properly authorized at the appropriate management level, are executed in accordance with such authorization, and are properly reflected on the Firm's books and records

The cooperation of each and every employee is necessary for this system to be effective in enabling Merrill Lynch to document transactions and dispositions of its assets accurately. Where employees are responsible for the acquisition or disposition of assets for the Firm, or are authorized to incur liabilities on the Firm's behalf, they must be careful not to exceed the authority vested in them. Every employee is involved, if not in the authorization or execution of business transactions, at least in reporting of some kind, if only expenses for travel and entertainment or hours worked on a time card. It is important that it be done honestly and accurately and that employees cooperate fully with both internal and independent audits.

Merrill Lynch's assets include more than its capital — there are its premises, equipment, information, business plans, ideas for new products and services, client lists, and, most importantly, in a very real sense, its people. It is expected that employees will use these assets only for the purposes intended and not for their personal benefit unless they have been approved for general employee or public use. This even extends to business opportunities that come to employees as a result of their employment — they are the proprietary opportunities of Merrill Lynch

8

### A Message from the Chairman and the President

*"To comply with the spirit and letter of applicable laws and rules and to fulfill the social and civic obligations of the Corporation."*

This is Merrill Lynch & Co., Inc.'s ethical commitment. This booklet has been prepared to make you and each of your fellow employees of Merrill Lynch & Co., Inc. and its subsidiaries aware of the Firm's commitment to the highest standards of business conduct. It is also designed to enlist your support — your *personal* commitment to high ethical standards — because the responsibility for Merrill Lynch's fulfilling its commitment rests with each and every one of us.

William A. Schreyer
Chairman and Chief Executive Officer

Daniel P. Tully
President and Chief Operating Officer

May, 1989

1



# GUIDELINES FOR BUSINESS CONDUCT

I have been given the Guidelines for Business Conduct brochure which explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct. I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it. By signing this document, I accept the obligation to follow the guidelines.

## INFORMATION ASSET PROTECTION POLICY

I have read the Merrill Lynch Information Asset Protection Policy Statements in the Employee Information Booklet, understand their contents and intent, and agree to adhere to them while I am employed by the Firm and after I leave. I understand that misuse of the Firm's information assets constitutes an infraction of policy and that failure to comply with these policies and their supporting standards may result in my immediate discharge without prior warning and that the Firm may seek civil or criminal penalties.

_VSC_  
Initials

_11-04-94_  
Date

ClibPDF - www.fastio.com



**Conflict of Interest**

To: Human Resources Department

1. This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts. This applies to accounts which I have a direct or indirect interest or over which I exercise control.

   I also understand that I must have prior written approval to participate in:
   - outside employment which presents a conflict of interest with my position at Merrill Lynch.
   - directorships in private corporations (public corporate directorships are strictly prohibited).
   - private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.
   - outside speaking and writing activities related to the securities and/or commodities business.

2. I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

   I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material that are made by me during my employment and agree that they shall be the exclusive property of Merrill Lynch. I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and to secure it's copyright rights.

3. I have read and agree to abide by this statement of Merrill Lynch & Co. policy. I also understand completion of this form is a condition of employment.

_VSC_                    _11-04-94_
Initials                  Date