IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

FEB 24 2000

Michael N. Milby, Clerk

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. C-00-64 |
| VERONICA CLARK, | § § § | |
| Defendant. | § | |

## EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1. Plaintiff Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") respectfully moves this Court for a Temporary Restraining Order and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

2. Contemporaneously herewith, Merrill Lynch filed a Complaint with the Court, which is incorporated herein and made a part hereof by reference.

3. Under Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure, Merrill Lynch has the express right to seek temporary injunctive relief from a court of competent jurisdiction pending an expedited arbitration hearing before a full panel of duly appointed arbitrators.

4. As stated in Merrill Lynch's Complaint and accompanying affidavit, Defendant Veronica Clark ("Defendant") has converted, and continues to convert, Merrill Lynch's trade secret information and has violated the express provisions of the Merrill Lynch agreements and policies to which she consented in writing.

5. For the reasons stated in Merrill Lynch's Complaint, unless Defendant is enjoined from converting Merrill Lynch's property to her own use, and unless Defendant is enjoined from soliciting Merrill Lynch's clients, Merrill Lynch will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists and other confidential information which are solely the property of Merrill Lynch and its clients;

(b) Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

6. Merrill Lynch has no adequate remedy at law.

7. Greater injury will be inflicted upon Merrill Lynch by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.

WHEREFORE, Merrill Lynch respectfully prays that this Court **ORDER** and **DECREE** that:

1. A Temporary Restraining Order and/or a Preliminary Injunction Order issue immediately, enjoining Defendant, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendant's new employer, First Union Securities, Inc., from soliciting, re-soliciting or accepting business or account

2

transfers from:

    (a) Any client of Merrill Lynch whose name first became known to Defendant while employed by Merrill Lynch; and

    (b) Any client of Merrill Lynch whom Defendant already has solicited through the use of any records or information, in original, copied, computerized, handwritten, or any other form, that Defendant obtained while employed by Merrill Lynch including, without limitation, any customer names, addresses or phone numbers contained on any computer database.

    2. Defendant, and anyone acting in active concert or participation with Defendant who receives actual notice of this Order, including any agent, employee, officer or representative of First Union, be further ordered to return to Merrill Lynch any and all information pertaining to Merrill Lynch customers whether in original, copied, computerized, handwritten or any other form, and purge any such information from their possession, custody, or control, within 24 hours of service upon Defendant of this Order.

    3. The Court's Order remain in full force and effect until such time as this Court specifically orders otherwise.

    4. Merrill Lynch be granted leave to commence discovery, including depositions, immediately in aid of preliminary injunction proceedings before the Court.

    5. Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties be directed to proceed toward an expedited arbitration hearing on the merits before a duly appointed panel of arbitrators pursuant to Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

6.   Defendant be ordered to show cause before the Court on the ___ day of _____, 2000 at ____ o'clock ___.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

                                             Respectfully submitted,

                                             */s/ David Green*

                                             David Green, Esquire
                                             BARGER, HERMANSEN,
                                             McKIBBEN & VILLAREAL, LLP
                                             One Shoreline Plaza
                                             800 North Shoreline Boulevard
                                             Suite 2000, North Tower
                                             Corpus Christi, Texas 78401
                                             (361) 882-6611
                                             (361) 883-8353 (telecopy)

                                             Attorneys for Plaintiff Merrill Lynch,
                                             Pierce, Fenner & Smith Inc.

Of Counsel:

Michael J. Fortunato
Daniel P. O'Meara
RUBIN & ASSOCIATES, P.C.
MCS Building
10 South Leopard Road
Suite 202
Paoli, PA  19301
(610) 408-2005
(610) 408-9050 (telecopy)

4

ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. C-00-64 |
| VERONICA CLARK, | § § § | |
| Defendant. | § | |

### AFFIDAVIT OF JOSEPH C. WISE, JR.

STATE OF TEXAS             :
                           :
COUNTY OF NUECES           :

I, Joseph C. Wise, Jr., being duly sworn according to law, do depose and state as follows:

1.  I am the Resident Manager of the Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") Corpus Christi, Texas office in which Defendant Veronica Clark ("Defendant") formerly was employed as a sales assistant and client associate. I submit this Affidavit in support of Merrill Lynch's motion for a temporary restraining order and preliminary injunction against the Defendant.

2.  I have been employed by Merrill Lynch in its Corpus Christi office continuously since 1986. I was initially employed as a Financial Consultant, assumed managerial responsibilities in 1992, became Sales Manager in 1994, and then became Resident Manager in 1996. As the Resident Manager of Merrill Lynch's Corpus Christi office, my duties and areas of responsibility include compliance matters, supervision, implementation of firm policy, and general familiarity with each employee and the accounts he or she services.

3. I am personally familiar with the facts and circumstances of the Defendant's employment with Merrill Lynch. I am familiar with the agreements she signed, including the Compliance Outline for Financial Consultants, Guidelines for Business Conduct, and Conflict of Interest agreements. (Copies of these documents are attached as Exhibits "A" - "C" to Merrill Lynch's Complaint). I also am generally familiar with the Merrill Lynch customers Defendant serviced, with the records and information relating to the accounts held by the customers Defendant serviced, and the records and information related to Defendant's employment with Merrill Lynch.

4. In exchange for the commitments agreed to by Defendant in the above agreements, Merrill Lynch provided Defendant with many benefits throughout her employment. Merrill Lynch employed Defendant and compensated her throughout her employment. Merrill Lynch also provided Defendant with access to Merrill Lynch's trade secret customer lists and customer information. In addition, Merrill Lynch paid for Defendant's annual registration fees with the New York Stock Exchange, the National Association of Securities Dealers, the American Stock Exchange, and the Texas state securities commission. Merrill Lynch also provided Defendant with various other Merrill Lynch employment-related benefits and opportunities.

5. As a result of her employment at Merrill Lynch, Defendant acquired access to hundreds of Merrill Lynch accounts representing over **$200 million** in assets under Merrill Lynch management. These Merrill Lynch accounts generated over **$2 million** in annualized revenues for Merrill Lynch in 1999 alone.

6. After the cessation of her employment with Merrill Lynch, Defendant joined a direct Merrill Lynch competitor now known as First Union Securities, which was formerly known as Everen Securities.

7. I believe that Defendant is actively violating her obligations to Merrill Lynch.

2

8. More specifically, I believe that she is using confidential information pertaining to Merrill Lynch customers to solicit the Merrill Lynch customers she formerly serviced. Merrill Lynch has received reports from various clients that Defendant has initiated contacted with them, solicited their business, and sought to have their accounts transferred to First Union Securities. In addition, it has been reported through me that Defendant in recent months initially agreed to return the Merrill Lynch records she possessed, and then denied possessing any such records.

Separately, it has been reported to me (initially through Defendant's ex-husband) that Defendant has obtained and retains extensive records concerning Merrill Lynch customers, and is using those records for the purposes of solicitation.

9. The disclosure of Merrill Lynch's customer information to a competitor firm and the use of this information to solicit Merrill Lynch customers is very troubling to me because our office has taken strict steps to maintain the confidentiality of Merrill Lynch's client lists and customer records and to ensure that these records and information are not disclosed outside of Merrill Lynch. Defendant was fully aware of and responsible for complying with Merrill Lynch's policy of confidentiality.

10. Every year our office conducts a compliance review to ensure that the confidentiality of Merrill Lynch's records is maintained and that Merrill Lynch policies are followed. In our office's compliance review, we first distribute a copy of our Compliance Outline for Financial Consultants to all of our registered employees. This Compliance Outline contains a section specifically requiring employees to keep all customer records and all information provided to Merrill Lynch by our clients confidential. More specifically, Merrill Lynch's Compliance Outline provides, in pertinent part, as follows:

3

## CONFIDENTIALITY OF CLIENT INFORMATION

You may not discuss the business affairs of any client with anyone, including other employees except on a need-to-know basis. Information or records concerning the business of the Firm and/or its clients may not be released except to persons legally entitled to receive them.

(Exhibit "A" to Merrill Lynch's Complaint). Each of the employees in our office is then required to abide by its terms as a condition of his or her continuing employment with Merrill Lynch. (See Exhibit "A" to Merrill Lynch's Complaint).

      11.    The Defendant's commitment not to misuse her knowledge of Merrill Lynch's clients also is contained the Guidelines for Business Conduct and her Conflict of Interest agreement which Defendant agreed to comply with as a condition of her employment with Merrill Lynch. (See Exhibits "B" and "C" to Complaint).

      12.    Our office also has implemented many other procedures to maintain the confidentiality of Merrill Lynch's proprietary client list and the confidential and sensitive information entrusted to Merrill Lynch by our clients. For example, our office policy is that a financial consultant is provided with access only to confidential information pertaining to the particular clients that he/she services. In addition, each financial consultant uses a confidential password to gain access to information pertaining to the Merrill Lynch clients they service and is permitted access to confidential customer information only on a "need to know" basis. In fact, when a financial consultant first signs on to the computer each day, a message immediately appears on the screen emphasizing that customer information is **"ML [Merrill Lynch] confidential"** and should be viewed only on a "need to know basis." In addition, Merrill Lynch management personally reviews outgoing correspondence from all of the employees in the office to ensure that no confidential or proprietary information is disclosed outside of Merrill Lynch.

4

13. Merrill Lynch developed and cultivated many of the Merrill Lynch customers serviced by the Defendant at great expense and over a number of years. Merrill Lynch's customer list is the lifeblood of its business and the expenditures incurred by Merrill Lynch in obtaining its customers include the millions of dollars spent by Merrill Lynch every year on national and local advertising, the millions of dollars a year Merrill Lynch spends for sales support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phones, mail, research, literature, seminars, trade and other professional news publications, promotional events, the retention of experts in tax, asset management, employee and health benefits, insurance, real estate, estate planning, and numerous other sub-specialties, and the many other expenditures Merrill Lynch incurs in maintaining its goodwill in the securities industry and in compiling its customer list.

14. The Defendant benefited directly and indirectly from the goodwill, reputation, and name recognition generated by all of these expenditures and consequently was able to develop and cultivate accounts on behalf of Merrill Lynch and increase the value of accounts she was servicing.

15. Unless Defendant's conduct is immediately enjoined, First Union Securities and other competitors of Merrill Lynch will be encouraged to engage in the same unlawful activity, which will cause severe and permanent damage Merrill Lynch. The only way to stop this activity is to enjoin the Defendant from violating her Agreement, from misusing Merrill Lynch's trade secret customer list and customer information, and from profiting from all of this wrongful conduct.

16. The Defendant's conduct has caused, and will continue to cause, harm to Merrill Lynch as follows:

5

   a) Disclosure of trade secrets, customer lists, and other confidential information which are solely the property of Merrill Lynch and its clients;

   b) Loss of confidentiality of the information contained in clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

   c) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts;

   d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

  17. I hereby state that the foregoing is true and correct to the best of my knowledge, information, and belief.

                          _____
                          Joseph C. Wise, Jr.

Sworn to and Subscribed Before me this 24 day of February 2000.

_____
Notary Public



6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | § § § |
| Plaintiff, | § § |
| v. | §   NO. C-00-64 |
| VERONICA CLARK, | § § § |
| Defendant. | § |

## ORDER

**AND NOW**, this ___ day of February, 2000, upon consideration of the Complaint and Motion of Plaintiff Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), and having determined that:

1. Under Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure, Merrill Lynch has the right to seek interim injunctive relief pending an arbitration hearing before a panel of duly appointed arbitrators;

2. The rights of Merrill Lynch with respect to its property, proprietary and confidential information, competitive interests, and agreements with Defendant Veronica Clark ("Defendant") are being and will continue to be violated by Defendant unless Defendant is restrained therefrom;

3. Merrill Lynch will suffer irreparable harm and loss if Defendant is permitted to (a) convert the property of Merrill Lynch to Defendant's own personal use and benefit, and that of Defendant's new employer, First Union Securities, Inc. ("First Union") and (b) solicit Merrill Lynch accounts, clients, and customers;

  4. Merrill Lynch has no adequate remedy at law;

  5. Greater injury will be inflicted upon Merrill Lynch by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.

**IT IS HEREBY ORDERED AND DECREED THAT:**

  1. A Temporary Restraining Order issue immediately and that security in the amount of $_____ be posted no later than the _____ day of February, 2000;

  2. Defendant is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendant's new employer, First Union, until hearing and thereafter until further Order of this Court from soliciting, re-soliciting, or accepting business or account transfers from:

    (a) Any client of Merrill Lynch whose name first became known to Defendant while employed by Merrill Lynch; and

    (b) Any client of Merrill Lynch whom Defendant already has solicited through the use of any records or information, in original, copied, computerized, handwritten, or any other form, that Defendant obtained while employed by Merrill Lynch or thereafter, including, without limitation, any customer names, addresses or phone numbers contained on any computer database.

  3. Defendant is further enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, employee, officer, or representative of First Union, from using, disclosing, or transmitting for any purpose, including solicitation of clients, the information contained in the records of Merrill Lynch, and Defendant and all others acting in concert with Defendant are further ordered to return to Merrill Lynch any and all records or information pertaining to Merrill Lynch customers, whether in original, copied, computerized,

handwritten or any other form that Defendant obtained while employed with Merrill Lynch, and to purge any and all such records and information from their possession, custody, or control within 24 hours of service upon Defendant of this Order; and

    4.    Defendant shall show cause before this Court on the ____ day of February, 2000 at ____ o'clock ____.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

BY THE COURT:

_____
United States District Judge